MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
CATALINO FAUSTINO ALMAZO VIDAL,
EDY SANTIAGO HERNANDEZ MENCIA,
ELCIAS LORENZO MEJIA SAPON,
HECTOR SUTUJ, MARTIN ITZEP
ALVAREZ, MIGUEL ALEX QUIEJ LOPEZ,
RICARDO MORALES, RUBEN CATU
AJMAC, SANTIAGO ANTONIO LOPEZ,
HERMENEGILDO MIQUEAS TAYUN
IXCOY, JACINTO FRANCISCO SAPON
AJCHE, JUAN NOE VASQUEZ BATEN,
SOTERO NERI FLORES, and GREGORIO
LOPEZ HERNANDEZ, *individually and on*
*behalf of others similarly situated,*

                              *Plaintiffs*,

           -against-

COLUMBUS VILLAGE LLC (D/B/A
BAREBURGER), BARE CITY TWO, LLC
(D/B/A BAREBURGER), BB ONE, LLC
(D/B/A BAREBURGER), EAST SIDE
BURGERS LLC (D/B/A BAREBURGER),
BB 57 LLC (D/B/A BAREBURGER),
GEORGIOS TZANIDAKIS, MICHAEL
PITSINOS, EDGAR RAMOS, MANNY DOE,
and MARIA DOE,

                              *Defendants.*

--------------------------------------------------------X

**COMPLAINT**


**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b) AND RULE 23**
**CLASS ACTION**
**ECF Case**

      Plaintiffs Catalino Faustino Almazo Vidal, Edy Santiago Hernandez Mencia, Elcias

Lorenzo Mejia Sapon, Hector Sutuj, Martin Itzep Alvarez, Miguel Alex Quiej Lopez, Ricardo

Morales, Ruben Catu Ajmac, Santiago Antonio Lopez, Hermenegildo Miqueas Tayun Ixcoy,

Jacinto Francisco Sapon Ajche, Juan Noe Vasquez Baten, Sotero Neri Flores, and Gregorio Lopez Hernandez , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Columbus Village LLC (d/b/a Bareburger), Bare City Two, LLC (d/b/a Bareburger), BB One, LLC (d/b/a Bareburger), East Side Burgers LLC (d/b/a Bareburger), BB 57 LLC (d/b/a Bareburger), ("Defendant Corporations"), Georgios Tzanidakis, Michael Pitsinos, Edgar Ramos, Manny Doe, and Maria Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.    Plaintiffs are former employees of Defendants Columbus Village LLC (d/b/a Bareburger), Bare City Two, LLC (d/b/a Bareburger), BB One, LLC (d/b/a Bareburger), East Side Burgers LLC (d/b/a Bareburger), BB 57 LLC (d/b/a Bareburger), Georgios Tzanidakis, Michael Pitsinos, Edgar Ramos, Manny Doe, and Maria Doe.

2.    Defendants own, operate, or control a chain of health food restaurants, located at 795 Columbus Avenue, New York, New York 10025 (hereinafter "the Columbus Avenue location"), 85 2nd Avenue, New York, New York 10003, (hereinafter "the Second Avenue location"), 514 3rd Avenue, New York, New York 10016 (hereinafter "the Third Avenue location"), 1370 1st Avenue, New York, New York 10021 (hereinafter "the First Avenue location") and at 313 West 57th Street, New York, New York 10019 (hereinafter "the West 57th Street location") all under the name "Bareburger".

3.    Upon information and belief, individual Defendants Georgios Tzanidakis, Michael Pitsinos, Edgar Ramos, Manny Doe, and Maria Doe, serve or served as owners, managers,

principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs were employed as salad preparers, dishwashers, and ostensibly as delivery workers at the restaurants located at 795 Columbus Avenue, New York, New York 10025, 85 2nd Avenue, New York, New York 10003, 514 3rd Avenue, New York, New York 10016, 1370 1st Avenue, New York, New York 10021, and 313 West 57th Street, New York, New York 10019.

5.      Plaintiffs Almazo, Mejia, Sutuj, Alvarez, Quiej, Morales, Ajmac, Antonio, Tayun, Sapon, Vasquez, Neri and Lopez were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing food, shredding cheese, cutting vegetables, tying up and cutting boxes, bringing merchandise up and down the stairs for the basement and the first floor, washing dishes, performing porter work, sweeping and mopping all over the store including the front of the store, taking out the trash, vacuuming the restaurants, cleaning the refrigerators, windows, containers, and the grills, stocking food in the refrigerators, and transporting merchandise to other Bareburgers (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.      Defendants employed and accounted for Plaintiffs Almazo, Mejia, Sutuj, Alvarez, Quiej, Morales, Ajmac, Antonio, Tayun, Sapon, Vasquez, Neri and Lopez as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.      Regardless, at all relevant times, Defendants paid these Plaintiffs at the lowered tip-credited rate.

12.      However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.      Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate.

14.      In addition, Defendants maintained a policy and practice of unlawfully appropriating these Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.    Plaintiffs seek certification of this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate fast food restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

21.    Plaintiff Catalino Faustino Almazo Vidal ("Plaintiff Almazo" or "Mr. Almazo") is an adult individual residing in New York County, New York.

22.     Plaintiff Almazo was employed by Defendants at Bareburger from approximately January 2013 until on or about November 15, 2017.

23.     Plaintiff Edy Santiago Hernandez Mencia ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in Queens County, New York.

24.     Plaintiff Hernandez was employed by Defendants at Bareburger from approximately March 2011 until on or about October 2016.

25.     Plaintiff Elcias Lorenzo Mejia Sapon ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in Queens County, New York.

26.     Plaintiff Mejia was employed by Defendants at Bareburger from approximately March 2016 until on or about October 2017.

27.     Plaintiff Hector Sutuj ("Plaintiff Sutuj" or "Mr. Sutuj") is an adult individual residing in Bronx County, New York.

28.     Plaintiff Sutuj was employed by Defendants at Bareburger from approximately December 15, 2014 until on or about December 2017.

29.     Plaintiff Martin Itzep Alvarez ("Plaintiff Alvarez" or Mr. Alvarez") is an adult individual residing in Bronx County, New York.

30.     Plaintiff Alvarez was employed by Defendants at Bareburger from approximately May 1, 2016 until on or about May 26, 2017.

31.     Plaintiff Miguel Alex Quiej Lopez ("Plaintiff Quiej" or "Mr. Quiej") is an adult individual residing in Bronx County, New York.

32.     Plaintiff Quiej was employed by Defendants at Bareburger from approximately November 2016 until on or about May 17, 2017.

33.     Plaintiff Ricardo Morales ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in Queens County, New York.

34.     Plaintiff Morales was employed by Defendants at Bareburger from approximately November 2015 until on or about April 5, 2016.

35.     Plaintiff Ruben Catu Ajmac ("Plaintiff Ajmac" or "Mr. Ajmac") is an adult individual residing in Queens County, New York.

36.     Plaintiff Ajmac was employed by Defendants at Bareburger from approximately November 2015 until on or about June 2017.

37.     Plaintiff Santiago Antonio Lopez ("Plaintiff Antonio" or "Mr. Antonio") is an adult individual residing in Bronx County, New York.

38.     Plaintiff Antonio was employed by Defendants at Bareburger from approximately November 2016 until on or about June 2017.

39.     Plaintiff Hermenegildo Miqueas Tayun Ixcoy ("Plaintiff Tayun" or "Mr. Tayun") is an adult individual residing in Queens County, New York.

40.     Plaintiff Tayun was employed by Defendants at Bareburger from approximately August 1, 2016 until on or about July 3, 2018.

41.     Plaintiff Jacinto Francisco Sapon Ajche ("Plaintiff Sapon" or "Mr. Sapon") is an adult individual residing in Bronx County, New York.

42.     Plaintiff Sapon was employed by Defendants at Bareburger from approximately September 12, 2016 until on or about May 2018.

43.     Plaintiff Juan Noe Vasquez Baten ("Plaintiff Vasquez" or "Mr. Vasquez") is an adult individual residing in Bronx County, New York.

44.     Plaintiff Vasquez was employed by Defendants at Bareburger from approximately April 2016 until on or about August 2018.

45.     Plaintiff Sotero Neri Flores ("Plaintiff Neri" or "Mr. Neri") is an adult individual residing in Queens County, New York.

46.     Plaintiff Neri was employed by Defendants at Bareburger from approximately September 26, 2016 until on or about May 20, 2018.

47.     Plaintiff Gregorio Lopez Hernandez ("Plaintiff Lopez" or "Mr. Lopez") is an adult individual residing in New York County, New York.

48.     Plaintiff Lopez was employed by Defendants at Bareburger from approximately June 2017 until on or about March 28, 2019.

*Defendants*

49.     At all relevant times, Defendants owned, operated, or controlled a chain of fast food restaurants, located at 795 Columbus Avenue, New York, New York 10025, 85 2nd Avenue, New York, New York 10003, 514 3rd Avenue, New York, New York 10016, 1370 1st Avenue, New York, New York 10021, and at 313 West 57th Street, New York, New York 10019 all under the name "Bareburger".

50.     Upon information and belief, Columbus Village LLC (d/b/a Bareburger) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 795 Columbus Avenue, New York, New York 10025.

51.     Upon information and belief, Bare City Two, LLC (d/b/a Bareburger) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 85 2nd Avenue, New York, New York 10003.

52.     Upon information and belief, BB One, LLC (d/b/a Bareburger) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 514 3rd Avenue, New York, New York 10016.

53.     Upon information and belief, East Side Burgers LLC (d/b/a Bareburger) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1370 1st Avenue, New York, New York 10021.

54.     Upon information and belief, BB 57 LLC (d/b/a Bareburger) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 313 West 57th Street, New York, New York 10019.

55.     Defendant Georgios Tzanidakis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Georgios Tzanidakis is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Georgios Tzanidakis possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

56.     Defendant Michael Pitsinos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Michael Pitsinos is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Michael Pitsinos possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He

determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

57.    Defendant Edgar Ramos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Edgar Ramos is sued individually in his capacity as a manager of Defendant Corporations. Defendant Edgar Ramos possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

58.    Defendant Manny Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Manny Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Manny Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

59.    Defendant Maria Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Maria Doe is sued individually in her capacity as a manager of Defendant Corporations. Defendant Maria Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs,

establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

60.     Defendants operate fast food restaurants located in multiple neighborhoods in Manhattan.

61.     Individual Defendants, Georgios Tzanidakis, Michael Pitsinos, Edgar Ramos, Manny Doe, and Maria Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

62.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

63.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

64.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

65.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

66.     Upon information and belief, Individual Defendants Georgios Tzanidakis and Michael Pitsinos operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f) intermingling assets and debts of their own with Defendant Corporations,

g) diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

67. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

68. In each year from 2013 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

69.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

70.     Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

71.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Catalino Faustino Almazo Vidal*

72.     Plaintiff Almazo was employed by Defendants from approximately January 2013 until on or about November 15, 2017.

73.     Defendants ostensibly employed Plaintiff Almazo as a delivery worker.

74.     However, Plaintiff Almazo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

75.     Although Plaintiff Almazo ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

76.     Plaintiff Almazo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

77.     Plaintiff Almazo's work duties required neither discretion nor independent judgment.

78.     From approximately January 2013 until on or about December 2016, Plaintiff Almazo worked at the Columbus Avenue location from approximately 10:00 a.m. until on or about

- 13 -

5:00 p.m., three days a week and from approximately 10:00 a.m. until on or about 5:30 p.m., two days a week (typically 35 to 36 hours per week).

79.    From approximately January 2017 until on or about November 15, 2017, Plaintiff Almazo worked from approximately 12:00 p.m. until on or about 5:00 p.m., three days a week and from approximately 12:00 p.m. until on or about 5:30 p.m., two days a week (typically 25 to 26 hours per week).

80.    Throughout his employment, Defendants paid Plaintiff Almazo his wages by check.

81.    From approximately January 2013 until on or about December 2014, Defendants paid Plaintiff Almazo $5.00 per hour.

82.    From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Almazo $5.65 per hour.

83.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Almazo $7.50 per hour.

84.    From approximately January 2017 until on or about November 15, 2017, Defendants paid Plaintiff Almazo $9.15 per hour.

85.    Plaintiff Almazo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

86.    For example, Defendants required Plaintiff Almazo to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

87.    Defendants never granted Plaintiff Almazo any breaks or meal periods of any kind.

88.    Plaintiff Almazo was never notified by Defendants that his tips were being included as an offset for wages.

89.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Almazo's wages.

90.     Defendants withheld a portion of Plaintiff Almazo's tips; specifically, Defendants withheld a percentage of credit card and seamless web order tips.

91.     Defendants only permitted Plaintiff Almazo to record his code at the time he started working but did not allow him to enter the code into the system at the time he finished working; thus, defendants did not permit Plaintiff Almazo to keep track of the actual time he worked.

92.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Almazo regarding overtime and wages under the FLSA and NYLL.

93.     Defendants did not provide Plaintiff Almazo an accurate statement of wages, as required by NYLL 195(3).

94.     In fact, Defendants adjusted Plaintiff Almazo's paystubs so that they reflected inaccurate wages and hours worked.

95.     Defendants did not give any notice to Plaintiff Almazo, in English and in Spanish (Plaintiff Almazo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

96.     Defendants required Plaintiff Almazo to purchase "tools of the trade" with his own funds—including an electric bicycle, two regular bicycles, two helmets, five sets of lights, and two bells.

*Plaintiff Edy Santiago Hernandez Mencia*

97.     Plaintiff Hernandez was employed by Defendants from approximately March 2011 until on or about October 2016.

98.     Defendants employed Plaintiff Hernandez as a salad preparer.

99.    Plaintiff Hernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

100.    Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

101.    Throughout his employment with Defendants, Plaintiff Hernandez regularly worked in excess of 40 hours per week.

102.    From approximately April 2013 until on or about February 2014, Plaintiff Hernandez worked at the First Avenue location from approximately 10:00 a.m. until on or about 11:00 p.m., five days a week and from approximately 10:00 a.m. until on or about 12:00 a.m., one day a week (typically 67 hours per week).

103.    From approximately March 2014 until on or about October 2016, Plaintiff Hernandez worked from approximately 10:00 a.m. until on or about 5:00 p.m., Mondays and Tuesdays, from approximately 10:00 a.m. until on or about 8:00 p.m., Thursdays and Sundays, and from approximately 10:00 a.m. until on or about 10:00 p.m. to 11:00 p.m., Fridays and Saturdays (typically 58 to 60 hours per week).

104.    From approximately April 2013 until on or about December 2014, Defendants paid Plaintiff Hernandez his wages in cash.

105.    From approximately January 2015 until on or about October 2016, Defendants paid Plaintiff Hernandez his wages by check.

106.    From approximately April 2013 until on or about October 2016, Defendants paid Plaintiff Hernandez $10.00 per hour.

107.    Plaintiff Hernandez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

108. For example, Defendants required Plaintiff Hernandez to work an additional one hour past his scheduled departure time once a week, and did not pay him for the additional time he worked.

109. Defendants never granted Plaintiff Hernandez any breaks or meal periods of any kind.

110. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez regarding overtime and wages under the FLSA and NYLL.

111. Defendants did not provide Plaintiff Hernandez an accurate statement of wages, as required by NYLL 195.

112. In fact, Defendants adjusted Plaintiff Hernandez's paystubs so that they reflected inaccurate wages and hours worked.

113. Defendants did not give any notice to Plaintiff Hernandez, in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

114. Defendants required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including five pairs of pants, twenty hats, and twelve pairs of cooking shoes.

*Plaintiff Elcias Lorenzo Mejia Sapon*

115. Plaintiff Mejia was employed by Defendants from approximately March 2016 until on or about June 2017.

116. Defendants ostensibly employed Plaintiff Mejia as a delivery worker.

117. However, Plaintiff Mejia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

118. Although Plaintiff Mejia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

119.    Plaintiff Mejia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

120.    Plaintiff Mejia's work duties required neither discretion nor independent judgment.

121.    Throughout his employment with Defendants, Plaintiff Mejia regularly worked in excess of 40 hours per week.

122.    From approximately March 2016 until on or about March 2017, Plaintiff Mejia worked at the Second Avenue location from approximately 4:00 p.m. until on or about 10:00 p.m. to 11:00 p.m., six days a week (typically 36 to 42 hours per week).

123.    From approximately March 2017 until on or about June 2017, Plaintiff Mejia worked from approximately 5:00 p.m. until on or about 9:00 p.m. to 9:30 p.m., four days a week, from approximately 4:00 p.m. until on or about 9:00 p.m. to 9:30 p.m., one day a week, and from approximately 6:00 p.m. until on or about 10:30 p.m. to 11:00 p.m., one day a week (typically 25.5 to 28.5 hours per week).

124.    Throughout his employment, Defendants paid Plaintiff Mejia his wages by check.

125.    From approximately March 2016 until on or about June 2017, Defendants paid Plaintiff Mejia $7.50 per hour.

126.    Plaintiff Mejia's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

127.    For example, Defendants required Plaintiff Mejia to work an additional one hour past his scheduled departure time six days a week, and did not pay him for the additional time he worked.

128.    Defendants never granted Plaintiff Mejia any breaks or meal periods of any kind.

129.    Plaintiff Mejia was never notified by Defendants that his tips were being included as an offset for wages.

130.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mejia's wages.

131.    Defendants only permitted Plaintiff Mejia to record his code at the time he started working but, on many occasions, did not allow him to enter the code into the system at the time he finished working.

132.    In fact, from about April 2016 until on or about March 2017, defendants punched him out one hour before he finished working; thus, defendants did not allow Plaintiff Mejia to keep track of the actual time he worked.

133.    Although Plaintiff Mejia was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Mejia was not compensated for all of the hours that he worked.

134.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mejia regarding overtime and wages under the FLSA and NYLL.

135.    Defendants did not provide Plaintiff Mejia an accurate statement of wages, as required by NYLL 195(3).

136.    In fact, Defendants adjusted Plaintiff Mejia's paystubs so that they reflected inaccurate wages and hours worked.

137.    Defendants did not give any notice to Plaintiff Mejia, in English and in Spanish (Plaintiff Mejia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

138.    Defendants required Plaintiff Mejia to purchase "tools of the trade" with his own funds—including bicycle maintenance and two delivery bags.

*Plaintiff Hector Sutuj*

139.    Plaintiff Sutuj was employed by Defendants from approximately December 15, 2014 until on or about December 2017.

140.    Defendants ostensibly employed Plaintiff Sutuj as a delivery worker.

141.    However, Plaintiff Sutuj was also required to spend a significant portion of his work day performing the non-tipped duties described above.

142.    Although Plaintiff Sutuj ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

143.    Plaintiff Sutuj regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

144.    Plaintiff Sutuj's work duties required neither discretion nor independent judgment.

145.    From approximately December 15, 2014 until on or about December 20, 2014, Plaintiff Sutuj worked at the Second Avenue location from approximately 5:00 p.m. until on or about 11:00 p.m., three days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., two days a week (typically 28 hours per week).

146.    From approximately December 21, 2014 until on or about October 2016, Plaintiff Sutuj worked from approximately 5:00 p.m. until on or about 11:00 p.m., four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., two days a week (typically 34 hours per week).

147.    From approximately November 2016 until on or about December 2017, Plaintiff Sutuj worked from approximately 5:00 p.m. until on or about 10:00 p.m., two days a week and from approximately 4:00 p.m. until on or about 11:00 p.m., four days a week (typically 38 hours per week).

148.    Throughout his employment, Defendants paid Plaintiff Sutuj his wages by check.

149.    From approximately December 15, 2014 until on or about December 2017, Defendants paid Plaintiff Sutuj $7.50 per hour.

150.    Plaintiff Sutuj's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

151.    For example, Defendants required Plaintiff Sutuj to work an additional one hour past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

152.    Defendants never granted Plaintiff Sutuj any breaks or meal periods of any kind.

153.    Plaintiff Sutuj was never notified by Defendants that his tips were being included as an offset for wages.

154.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sutuj's wages.

155.    Defendants only permitted Plaintiff Sutuj to record his code at the time he started working but, on many occasions, did not allow him to enter the code into the system at the time he finished working.

156.    In fact, defendants punched him out one hour before he finished working; thus, defendants did not allow Plaintiff Sutuj to keep track of the actual time he worked.

157.    Although Plaintiff Sutuj was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Sutuj was not compensated for all of the hours that he worked.

158.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sutuj regarding overtime and wages under the FLSA and NYLL.

159.    Defendants did not provide Plaintiff Sutuj an accurate statement of wages, as required by NYLL 195(3).

160.    Defendants did not give any notice to Plaintiff Sutuj, in English and in Spanish (Plaintiff Sutuj's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

161.    Defendants required Plaintiff Sutuj to purchase "tools of the trade" with his own funds—including four bicycles, one helmet, two sets of lights, and bicycle maintenance.

*Plaintiff Martin Itzep Alvarez*

162.    Plaintiff Alvarez was employed by Defendants from approximately May 1, 2016 until on or about May 26, 2017.

163.    Defendants ostensibly employed Plaintiff Alvarez as a delivery worker.

164.    However, Plaintiff Alvarez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

165.    Although Plaintiff Alvarez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

166.    Plaintiff Alvarez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

167.    Plaintiff Alvarez's work duties required neither discretion nor independent judgment.

168.    From approximately May 1, 2016 until on or about May 26, 2017, Plaintiff Alvarez worked at the Second Avenue location from approximately 10:00 a.m. until on or about 4:20 p.m., four days a week and from approximately 10:00 a.m. until on or about 4:00 p.m., two days a week (typically 37.3 hours per week).

169.    Throughout his employment, Defendants paid Plaintiff Alvarez his wages by check.

170.    From approximately May 1, 2016 until on or about May 26, 2017, Defendants paid Plaintiff Alvarez $7.50 per hour.

171.    Plaintiff Alvarez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

172.    For example, Defendants required Plaintiff Alvarez to work an additional twenty minutes past his scheduled departure time four days a week, and did not pay him for the additional time he worked.

173.    Defendants never granted Plaintiff Alvarez any breaks or meal periods of any kind.

174.    Plaintiff Alvarez was never notified by Defendants that his tips were being included as an offset for wages.

175.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Alvarez's wages.

176.    Defendants only permitted Plaintiff Alvarez to record his code at the time he started working but, on many occasions, did not allow him to enter the code into the system at the time he finished working.

177.    In fact, defendants punched him out before he finished working; thus, defendants did not allow Plaintiff Alvarez to keep track of the actual time he worked.

178.    Although Plaintiff Alvarez was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Alvarez was not compensated for all of the hours that he worked.

179.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alvarez regarding overtime and wages under the FLSA and NYLL.

180.    Defendants did not provide Plaintiff Alvarez an accurate statement of wages, as required by NYLL 195(3).

181.    In fact, Defendants adjusted Plaintiff Alvarez's paystubs so that they reflected inaccurate wages and hours worked.

182.    Defendants did not give any notice to Plaintiff Alvarez, in English and in Spanish (Plaintiff Alvarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

183.    Defendants required Plaintiff Alvarez to purchase "tools of the trade" with his own funds—including one bicycle, a vest, a chain and lock, and a helmet.

*Plaintiff Miguel Alex Quiej Lopez*

184.    Plaintiff Quiej was employed by Defendants from approximately November 2016 until on or about May 17, 2017.

185.    Defendants ostensibly employed Plaintiff Quiej as a delivery worker.

186.    However, Plaintiff Quiej was also required to spend a significant portion of his work day performing the non-tipped duties described above.

187.    Although Plaintiff Quiej ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

188.    Plaintiff Quiej regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

189.    Plaintiff Quiej's work duties required neither discretion nor independent judgment.

190.    From approximately November 2016 until on or about March 2017, Plaintiff Quiej worked at the Second Avenue location from approximately 4:00 p.m. until on or about 10:00 p.m.,

four days a week and from approximately 4:00 p.m. until on or about 11:30 p.m., two days a week (typically 39 hours per week).

191.    From approximately March 2017 until on or about May 17, 2017, Plaintiff Quiej worked from approximately 4:00 p.m. until on or about 10:00 p.m., one day a week and from approximately 4:00 p.m. until on or about 9:00 p.m., four days a week (typically 26 hours per week).

192.    Throughout his employment, Defendants paid Plaintiff Quiej his wages by check.

193.    From approximately November 2016 until on or about May 17, 2017, Defendants paid Plaintiff Quiej $7.50 per hour.

194.    Plaintiff Quiej's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

195.    For example, Defendants required Plaintiff Quiej to work an additional 30 minutes to one and a half hours past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

196.    Defendants never granted Plaintiff Quiej any breaks or meal periods of any kind.

197.    Plaintiff Quiej was never notified by Defendants that his tips were being included as an offset for wages.

198.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Quiej's wages.

199.    Defendants only permitted Plaintiff Quiej to record his code at the time he started working but did not allow him to enter the code into the system at the time he finished working.

200.    In fact, defendants punched him out before he finished working; thus, defendants did not allow Plaintiff Quiej to keep track of the actual time he worked.

201.    Although Plaintiff Quiej was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Quiej was not compensated for all of the hours that he worked.

202.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Quiej regarding overtime and wages under the FLSA and NYLL.

203.    Defendants did not provide Plaintiff Quiej an accurate statement of wages, as required by NYLL 195(3).

204.    In fact, Defendants adjusted Plaintiff Quiej's paystubs so that they reflected inaccurate wages and hours worked.

205.    Defendants did not give any notice to Plaintiff Quiej, in English and in Spanish (Plaintiff Quiej's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

206.    Defendants required Plaintiff Quiej to purchase "tools of the trade" with his own funds—including a bicycle and a set of lights.

*Plaintiff Ricardo Morales*

207.    Plaintiff Morales was employed by Defendants from approximately November 2015 until on or about April 5, 2016.

208.    Defendants ostensibly employed Plaintiff Morales as a delivery worker.

209.    However, Plaintiff Morales was also required to spend a significant portion of his work day performing the non-tipped duties described above.

210.    Although Plaintiff Morales ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

211. Plaintiff Morales regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

212. Plaintiff Morales's work duties required neither discretion nor independent judgment.

213. From approximately November 2015 until on or about April 5, 2016, Plaintiff Morales worked at the Third Avenue location from approximately 5:00 p.m. until on or about 10:00 p.m., four days a week and from approximately 5:00 p.m. until on or about 10:10 p.m., two days a week (typically 30.3 hours per week).

214. Throughout his employment, Defendants paid Plaintiff Morales his wages by check.

215. From approximately November 2015 until on or about April 5, 2016, Defendants paid Plaintiff Morales $5.65 per hour.

216. Plaintiff Morales's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

217. For example, Defendants required Plaintiff Morales to work an additional ten minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

218. Defendants never granted Plaintiff Morales any breaks or meal periods of any kind.

219. Plaintiff Morales was never notified by Defendants that his tips were being included as an offset for wages.

220. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Morales's wages.

221. On a number of occasions, Defendants required Plaintiff Morales to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

222.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

223.    Defendants did not provide Plaintiff Morales an accurate statement of wages, as required by NYLL 195(3).

224.    Defendants did not give any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

225.    Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a chain, and a lock.

*Plaintiff Ruben Catu Ajmac*

226.    Plaintiff Ajmac was employed by Defendants from approximately November 2015 until on or about June 2017.

227.    Defendants ostensibly employed Plaintiff Ajmac as a delivery worker.

228.    However, Plaintiff Ajmac was also required to spend a significant portion of his work day performing the non-tipped duties described above.

229.    Although Plaintiff Ajmac ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

230.    Plaintiff Ajmac regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

231.    Plaintiff Ajmac's work duties required neither discretion nor independent judgment.

232.    From approximately November 2015 until on or about November 2016, Plaintiff Ajmac worked from approximately 6:00 p.m. until on or about 10:30 p.m., four days a week and

from approximately 6:00 p.m. until on or about 11:30 p.m., two days a week (typically 29 hours per week).

233.    From approximately November 2016 until on or about December 2016, Plaintiff Ajmac worked from approximately 6:00 p.m. until on or about 10:30 p.m., three days a week and from approximately 6:00 p.m. until on or about 11:30 p.m., two days a week (typically 24.5 hours per week).

234.    From approximately December 2016 until on or about June 2017, Plaintiff Ajmac worked from approximately 6:00 p.m. until on or about 10:30 p.m., four days a week and from approximately 6:00 p.m. until on or about 11:30 p.m., two days a week (typically 29 hours per week).

235.    Throughout his employment, Defendants paid Plaintiff Ajmac his wages by check.

236.    From approximately November 2015 until on or about December 2015, Defendants paid Plaintiff Ajmac $5.65 per hour.

237.    From approximately January 2016 until on or about June 2017, Defendants paid Plaintiff Ajmac $7.50 per hour.

238.    Plaintiff Ajmac's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

239.    For example, Defendants required Plaintiff Ajmac to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

240.    Defendants never granted Plaintiff Ajmac any breaks or meal periods of any kind.

241.    Plaintiff Ajmac was never notified by Defendants that his tips were being included as an offset for wages.

242.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ajmac's wages.

243.    Defendants withheld a portion of Plaintiff Ajmac's tips; specifically, Defendants withheld a portion of all the tips customers paid.

244.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ajmac regarding overtime and wages under the FLSA and NYLL.

245.    Defendants did not provide Plaintiff Ajmac an accurate statement of wages, as required by NYLL 195(3).

246.    Defendants did not give any notice to Plaintiff Ajmac, in English and in Spanish (Plaintiff Ajmac's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

247.    Defendants required Plaintiff Ajmac to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, and a chain and lock.

*Plaintiff Santiago Antonio Lopez*

248.    Plaintiff Antonio was employed by Defendants from approximately November 2016 until on or about June 2017.

249.    Defendants ostensibly employed Plaintiff Antonio as a delivery worker.

250.    However, Plaintiff Antonio was also required to spend a significant portion of his work day performing the non-tipped duties described above.

251.    Although Plaintiff Antonio ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

252.    Plaintiff Antonio regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

253.    Plaintiff Antonio's work duties required neither discretion nor independent judgment.

254.    From approximately November 2016 until on or about June 2017, Plaintiff Antonio worked at the Second Avenue location from approximately 10:00 a.m. until on or about 4:00 p.m., four days a week and from approximately 10:00 a.m. until on or about 4:30 p.m., two days a week (typically 37 hours per week).

255.    Throughout his employment, Defendants paid Plaintiff Antonio his wages by check.

256.    From approximately November 2016 until on or about December 2016, Defendants paid Plaintiff Antonio $9.00 per hour.

257.    From approximately January 2017 until on or about June 2017, Defendants paid Plaintiff Antonio $7.50 per hour for delivery work and $11.00 per hour for non-tipped work.

258.    Plaintiff Antonio's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

259.    For example, Defendants required Plaintiff Antonio to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

260.    Defendants never granted Plaintiff Antonio any breaks or meal periods of any kind.

261.    Plaintiff Antonio was never notified by Defendants that his tips were being included as an offset for wages.

262.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Antonio's wages.

263.    Defendants only permitted Plaintiff Antonio to record his code at the time he started working but did not allow him to enter the code into the system at the time he finished working.

264.     In fact, defendants punched him out before he finished working; thus, defendants did not allow Plaintiff Antonio to keep track of the actual time he worked.

265.     Although Plaintiff Antonio was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Antonio was not compensated for all of the hours that he worked.

266.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Antonio regarding overtime and wages under the FLSA and NYLL.

267.     Defendants did not provide Plaintiff Antonio an accurate statement of wages, as required by NYLL 195(3).

268.     In fact, Defendants adjusted Plaintiff Antonio's paystubs so that they reflected inaccurate wages and hours worked.

269.     Defendants did not give any notice to Plaintiff Antonio, in English and in Spanish (Plaintiff Antonio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

270.     Defendants required Plaintiff Antonio to purchase "tools of the trade" with his own funds—including one bicycle, a helmet, a set of lights, a chain and lock, and bicycle maintenance.

*Plaintiff Hermenegildo Miqueas Tayun Ixcoy*

271.     Plaintiff Tayun was employed by Defendants from approximately August 1, 2016 until on or about July 3, 2018.

272.     Defendants ostensibly employed Plaintiff Tayun as a delivery worker.

273.     However, Plaintiff Tayun was also required to spend a significant portion of his work day performing the non-tipped duties described above.

274.    Although Plaintiff Tayun ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

275.    Plaintiff Tayun regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

276.    Plaintiff Tayun's work duties required neither discretion nor independent judgment.

277.    From approximately August 1, 2016 until on or about October 14, 2016, Plaintiff Tayun worked at the Third Avenue location from approximately 10:00 a.m. until on or about 4:00 p.m., six days a week (typically 36 hours per week).

278.    From approximately October 15, 2016 until on or about September 2017, Plaintiff Tayun worked at the Third Avenue location from approximately 11:00 a.m. until on or about 4:00 p.m., six days a week (typically 30 hours per week).

279.    From approximately October 2017 until on or about March 21, 2018, Plaintiff Tayun worked at the Third Avenue location from approximately 9:00 a.m. until on or about 3:00 p.m., five days a week and from approximately 10:00 a.m. until on or about 4:00 p.m., one day a week (typically 36 hours per week).

280.    From approximately March 22, 2018 until on or about July 3, 2018, Plaintiff Tayun worked at the Third Avenue location from approximately 9:00 a.m. until on or about 3:00 p.m., six days a week (typically 36 hours per week).

281.    Throughout his employment, Defendants paid Plaintiff Tayun his wages by check.

282.    From approximately August 2016 until on or about December 2016, Defendants paid Plaintiff Tayun $9.00 per hour.

283.    From approximately January 2017 until on or about September 2017, Defendants paid Plaintiff Tayun $7.50 per hour.

284.    From approximately October 2017 until on or about July 3, 2018, Defendants paid Plaintiff Tayun $10.85 per hour for delivery work and $13.00 per hour two hours a day for non-tipped work.

285.    For approximately one week, Defendants did not pay Plaintiff Tayun any wages for his work.

286.    Plaintiff Tayun was never notified by Defendants that his tips were being included as an offset for wages.

287.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Tayun's wages.

288.    During 2017, Defendants withheld a portion of Plaintiff Tayun's tips; specifically, Defendants withheld a portion of all the credit card tips customers wrote in for Plaintiff Tayun; he repeatedly complained to the manager, but never got his tips back.

289.    From approximately October 2017 until on or about July 2018, Plaintiff Tayun was required to enter one code for his hours as a delivery worker and a different code for his hours as a non-tip worker.

290.    On a number of occasions, Defendants required Plaintiff Tayun to sign a document, the contents of which he was not allowed to review in detail.

291.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Tayun regarding overtime and wages under the FLSA and NYLL.

292.    Defendants did not provide Plaintiff Tayun an accurate statement of wages, as required by NYLL 195(3).

293.    In fact, Defendants adjusted Plaintiff Tayun's paystubs so that they reflected inaccurate wages and hours worked.

294.    Defendants did not give any notice to Plaintiff Tayun, in English and in Spanish (Plaintiff Tayun's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

295.    Defendants required Plaintiff Tayun to purchase "tools of the trade" with his own funds—including two bicycles, two helmets, and a pair of non-slip shoes.

*Plaintiff Jacinto Francisco Sapon Ajche*

296.    Plaintiff Sapon was employed by Defendants from approximately September 12, 2016 until on or about May 2018.

297.    Defendants ostensibly employed Plaintiff Sapon as a delivery worker.

298.    However, Plaintiff Sapon was also required to spend a significant portion of his work day performing the non-tipped duties described above.

299.    Although Plaintiff Sapon ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

300.    Plaintiff Sapon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

301.    Plaintiff Sapon's work duties required neither discretion nor independent judgment.

302.    From approximately September 12, 2016 until on or about December 2016, Plaintiff Sapon worked at the Third Avenue location from approximately 5:00 p.m. until on or about 11:00 p.m., five days a week (typically 30 hours per week).

303.    From approximately January 2017 until on or about March 2017, Plaintiff Sapon worked at the Third Avenue location from approximately 5:00 p.m. until on or about 10:00 p.m., four days a week and from approximately 5:00 p.m. until on or about 11:00 p.m., two days a week (typically 32 hours per week).

304.    From approximately March 2017 until on or about June 2017, Plaintiff Sapon worked at the Third Avenue location from approximately 5:00 p.m. until on or about 11:00 p.m., five days a week (typically 30 hours per week).

305.    From approximately July 2017 until on or about December 2017, Plaintiff Sapon worked at the Third Avenue location from approximately 5:00 p.m. until on or about 11:00 p.m., four days a week (typically 24 hours per week).

306.    From approximately January 2018 until on or about May 2018, Plaintiff Sapon worked at the Third Avenue location from approximately 5:00 p.m. until on or about 11:00 p.m., five days a week (typically 30 hours per week).

307.    Throughout his employment, Defendants paid Plaintiff Sapon his wages by check.

308.    From approximately September 2016 until on or about June 2017, Defendants paid Plaintiff Sapon $7.50 per hour for the first 25 hours worked.

309.    From approximately July 2017 until on or about December 2017, Defendants paid Plaintiff Sapon $9.15 per hour.

310.    From approximately January 2018 until on or about May 2018, Defendants paid Plaintiff Sapon $10.85 per hour.

311.    Plaintiff Sapon's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

312.    For example, Defendants required Plaintiff Sapon to work an additional 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

313.    Defendants never granted Plaintiff Sapon any breaks or meal periods of any kind.

314.    Plaintiff Sapon was never notified by Defendants that his tips were being included as an offset for wages.

315. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sapon's wages.

316. Defendants withheld a portion of Plaintiff Sapon's tips; specifically, Defendants withheld a percentage of the tips customers wrote in for Plaintiff Sapon.

317. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sapon regarding overtime and wages under the FLSA and NYLL.

318. Defendants did not provide Plaintiff Sapon an accurate statement of wages, as required by NYLL 195(3).

319. Defendants did not give any notice to Plaintiff Sapon, in English and in Spanish (Plaintiff Sapon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

320. Defendants required Plaintiff Sapon to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, a chain and lock, and a set of lights.

*Plaintiff Juan Noe Vasquez Baten*

321. Plaintiff Vasquez was employed by Defendants from approximately April 2016 until on or about August 2018.

322. Defendants employed Plaintiff Vasquez as a dishwasher and ostensibly as a delivery worker.

323. However, Plaintiff Vasquez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

324. Although Plaintiff Vasquez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

325.    Plaintiff Vasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

326.    Plaintiff Vasquez's work duties required neither discretion nor independent judgment.

327.    From approximately April 2016 until on or about September 2017, Plaintiff Vasquez worked at the Third Avenue location as a dishwasher from approximately 10:00 a.m. until on or about 4:00 p.m., six days a week (typically 36 hours per week).

328.    From approximately October 2017 until on or about January 2018, Plaintiff Vasquez worked at the Third Avenue location as a delivery worker from approximately 11:00 a.m. until on or about 4:00 p.m., five days a week and from approximately 9:00 a.m. until on or about 4:00 p.m., one day a week (typically 32 hours per week).

329.    From approximately February 2018 until on or about August 2018, Plaintiff Vasquez worked at the Third Avenue location from approximately 10:00 a.m. until on or about 4:00 p.m., five days a week and from approximately 9:00 a.m. until on or about 4:00 p.m., one day a week (typically 37 hours per week).

330.    Throughout his employment, Defendants paid Plaintiff Vasquez his wages by check.

331.    From approximately April 2016 until on or about October 2017, Defendants paid Plaintiff Vasquez $11.00 per hour.

332.    From approximately November 2017 until on or about August 2018, Defendants paid Plaintiff Vasquez $13.00 per hour for non-tipped work and $10.85 per hour for delivery work.

333.    Defendants never granted Plaintiff Vasquez any breaks or meal periods of any kind.

334.    Plaintiff Vasquez was never notified by Defendants that his tips were being included as an offset for wages.

335.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vasquez's wages.

336.    Defendants withheld a portion of Plaintiff Vasquez's tips; specifically, Defendants withheld a percentage of the credit card tips customers wrote in for Plaintiff Vasquez.

337.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vasquez regarding overtime and wages under the FLSA and NYLL.

338.    Defendants did not provide Plaintiff Vasquez an accurate statement of wages, as required by NYLL 195(3).

339.    Defendants did not give any notice to Plaintiff Vasquez, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

340.    Defendants required Plaintiff Vasquez to purchase "tools of the trade" with his own funds—including two bicycles, two helmets, and three non-slip shoes.

*Plaintiff Sotero Neri Flores*

341.    Plaintiff Neri was employed by Defendants from approximately September 26, 2016 until on or about May 20, 2018.

342.    Defendants ostensibly employed Plaintiff Neri as a delivery worker.

343.    However, Plaintiff Neri was also required to spend a significant portion of his work day performing the non-tipped duties described above.

344.    Although Plaintiff Neri ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

345.    Plaintiff Neri regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

346.    Plaintiff Neri's work duties required neither discretion nor independent judgment.

347.    From approximately September 26, 2016 until on or about May 20, 2018, Plaintiff Neri worked at the Third Avenue location from approximately 10:00 a.m. until on or about 4:00 p.m., six days a week (typically 36 hours per week).

348.    Throughout his employment, Defendants paid Plaintiff Neri his wages by check.

349.    From approximately September 26, 2016 until on or about June 18, 2017, Defendants paid Plaintiff Neri $7.50 per hour.

350.    From approximately June 19, 2017 until on or about December 31, 2017, Defendants paid Plaintiff Neri $9.15 per hour and the minimum wage for 2 hours of work each day.

351.    From approximately January 2018 until on or about May 20, 2018, Defendants paid Plaintiff Neri $10.85 per hour and the minimum wage for 2 hours per day.

352.    Defendants never granted Plaintiff Neri any breaks or meal periods of any kind.

353.    Plaintiff Neri was never notified by Defendants that his tips were being included as an offset for wages.

354.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Neri's wages.

355.    Defendants withheld a portion of Plaintiff Neri's tips; specifically, Defendants withheld a portion of all the tips customers wrote in for Plaintiff Neri.

356.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Neri regarding overtime and wages under the FLSA and NYLL.

357.    Defendants did not provide Plaintiff Neri an accurate statement of wages, as required by NYLL 195(3).

358.    Defendants did not give any notice to Plaintiff Neri of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

359.    Defendants required Plaintiff Neri to purchase "tools of the trade" with his own funds—including one vest, two bicycles, two helmets, four chains, and three aprons.

*Plaintiff Gregorio Lopez Hernandez*

360.    Plaintiff Lopez was employed by Defendants from approximately June 2017 until on or about March 28, 2019.

361.    Defendants ostensibly employed Plaintiff Lopez as a delivery worker.

362.    However, Plaintiff Lopez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

363.    Although Plaintiff Lopez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

364.    Plaintiff Lopez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

365.    Plaintiff Lopez's work duties required neither discretion nor independent judgment.

366.    From approximately June 2017 until on or about March 28, 2019, Plaintiff Lopez worked at the West 57th Street location from approximately 5:00 p.m. until on or about 10:00 p.m., four days a week (typically 20 hours per week).

367.    Throughout his employment, Defendants paid Plaintiff Lopez his wages by check.

368.    From approximately June 2017 until on or about December 2017, Defendants paid Plaintiff Lopez $9.00 per hour.

369.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Lopez $10.50 per hour.

370.    From approximately January 2019 until on or about March 28, 2019, Defendants paid Plaintiff Lopez $12.50 per hour.

371.    For approximately six days between March 18, 2019 until on or about March 28, 2019, Defendants did not pay Plaintiff Lopez any wages for his work.

372.    Defendants never granted Plaintiff Lopez any breaks or meal periods of any kind.

373.    Plaintiff Lopez was never notified by Defendants that his tips were being included as an offset for wages.

374.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Lopez's wages.

375.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lopez regarding overtime and wages under the FLSA and NYLL.

376.    Defendants did not provide Plaintiff Lopez an accurate statement of wages, as required by NYLL 195(3).

377.    Defendants did not give any notice to Plaintiff Lopez, in English and in Spanish (Plaintiff Lopez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

378.    Defendants required Plaintiff Lopez to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, a set of bicycle lights, and a bell.

*Defendants' General Employment Practices*

379.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

380.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

381.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

382.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

383.     Defendants required Plaintiffs Almazo, Mejia, Sutuj, Alvarez, Quiej, Morales, Ajmac, Antonio, Tayun, Sapon, Vasquez, Neri and Lopez and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

384.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

385.      These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

386.     These Plaintiffs and all other tipped workers were paid at the lowered tip-credit rate by Defendants.

387.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

388.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

389.    In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was at the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

390.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

391.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

392.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

393.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

394.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

395.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

396.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

397.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

398.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

399.    Defendants paid Plaintiffs their wages in cash and then by check.

400.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

401.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

402.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

403.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

404.     Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

405.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

406.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class Members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

407.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been

subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

408.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

409.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

410.    Plaintiffs bring their New York Labor Law minimum wage, wage deduction and liquidated damages claims on behalf of all persons who were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

411.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

412.    There are questions of law and fact common to the Class including:

a)    What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)    What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)  Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage within the meaning of the New York Labor Law;

e)  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

f)  At what common rate, or rates subject to common methods of calculation, were Defendants required to pay the class members for their work; and

g)  What were the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

413.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

414.    The representative parties will fairly and adequately protect the interests of the Class and had no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

415.    The common questions of law and fact predominate over questions affecting only individual members.

416.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual

plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

417.    Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

418.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

419.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

420.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

421.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

422.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class Members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

423.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

424.    Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

425.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

426.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class Members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

427.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

428.    Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

429.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

430.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

431.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage.

432.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

433.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

<h2 style="text-align:center">FOURTH CAUSE OF ACTION</h2>

<h2 style="text-align:center">VIOLATION OF THE OVERTIME PROVISIONS</h2>

<h2 style="text-align:center">OF THE NEW YORK STATE LABOR LAW</h2>

434.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

435.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

436.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

437.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

<h2 style="text-align:center">FIFTH CAUSE OF ACTION</h2>

<h2 style="text-align:center">VIOLATION OF THE SPREAD OF HOURS WAGE ORDER</h2>

<h2 style="text-align:center">OF THE NEW YORK COMMISSIONER OF LABOR</h2>

438.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

439.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs'

spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

440.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

441.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

442.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

443.    Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

444.    Defendants are liable to each Plaintiff (and the FLSA and Rule 23 class members) in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

**OF THE NEW YORK LABOR LAW**

445.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

446.     With each payment of wages, Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

447.     Defendants are liable to each Plaintiff (and the FLSA and Rule 23 class members) in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

448.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

449.     Defendants required Plaintiffs (and the FLSA and Rule 23 class members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

450.     Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

**OF THE NEW YORK LABOR LAW**

451.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

452.    At all relevant times, Defendants were Plaintiffs' (and the FLSA and Rule 23 class members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

453.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

454.    Defendants unlawfully misappropriated a portion of Plaintiffs' (and the FLSA and Rule 23 class members') tips that were received from customers.

455.    Defendants knowingly and intentionally retained a portion of Plaintiffs' (and the FLSA and Rule 23 class members') tips in violations of the NYLL and supporting Department of Labor Regulations.

456.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**

**VIOLATION OF THE TIMELY PAYMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

457.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

458.    Defendants did not pay Plaintiffs (and the FLSA and Rule 23 class members) on a regular weekly basis, in violation of NYLL §191.

459.    Defendants are liable to each Plaintiff (and the FLSA and Rule 23 class members) in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class Members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class Members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class Members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 Class Members;

(f)    Awarding Plaintiffs and the FLSA and Rule 23 Class Members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA and Rule 23 Class Members liquidated damages

in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the FLSA and Rule 23 class members);

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the FLSA and Rule 23 class members);

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs (and the FLSA and Rule 23 class members);

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs (and the FLSA and Rule 23 class members);

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' (and the FLSA and Rule 23 class members') compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs (and the FLSA and Rule 23 class members);

(n)     Awarding Plaintiffs (and the FLSA and Rule 23 class members) damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs (and the FLSA and Rule 23 class members) damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs (and the FLSA and Rule 23 class members) liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA and Rule 23 Class Members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA and Rule 23 Class Members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

April 15, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

November 16, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                    Catalino Faustino Almazo Vidal

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:               _____

Date / Fecha:                    November 16, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 10, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          Edy Santiago Hernandez Mencia

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:          *EDY Santiago Hernandez*

Date / Fecha:          10 de noviembre de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 19, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Elcias Lorenzo Mejia Sapon

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    19 de mayo de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 24, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Hector Sutuj

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     24 de mayo de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 10, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Martin Itzep Alvarez

                                    Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                       10 de julio de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 19, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Miguel Alex Quiej Lopez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     19 de mayo de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 22, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  **Ruben Catu Ajmac**

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                   22 de mayo de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 24, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Santiago Antonio Lopez**

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     24 de mayo de 2017

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 27, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:
Legal Representative / Abogado:

Hermenegildo Miqueas Tayun Ixcoy
Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:

27 de julio de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 27, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jacinto Francisco Sapon Ajche

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     27 de Julio del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 29, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Juan Noe Vasquez Baten

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 Juan Vasquez

Date / Fecha:                      29 de Octubre, 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 24, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Sotero Neri Flores

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              24 de julio 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 5, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Gregorio Lopez Hernandez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:          *Gregorio Lopez*

Date / Fecha:               5 de abril 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                                          Telephone: (212) 317-1200
New York, New York 10165                                                         Facsimile: (212) 317-1620

---

Faillace@employmentcompliance.com


April 22, 2019

BY HAND


TO:    Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**


Name / Nombre:                           Ricardo Morales

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              22 de Abril 2019

*Certified as a minority-owned business in the State of New York*